## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **RONDALL CLYDE MIXSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00240 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD CLARKE, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Rondall Clyde Mixson, Pro Se Plaintiff; Laura H. Cahill, Assistant Attorney General, CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Defendants.*

The plaintiff, Rondall Clyde Mixson, a federal inmate proceeding pro se, filed this civil rights action against officials of the Virginia Department of Corrections (VDOC) concerning events that occurred while he was in VDOC custody.[1]  In the Amended Complaint, Mixson asserts claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), related to devices recommended as accommodations of his bilateral hearing loss.  The matter is presently before me on the defendants' Motion for Summary Judgment, as supplemented, arguing that Mixson's claims are barred because he failed to exhaust available administrative

---

[1]  After filing this lawsuit, Mixson was transferred to federal custody to serve sentences imposed by this court.

remedies.  After review of the parties' submissions, I conclude that the defendants are entitled to summary judgment based on the failure to exhaust.

## I. BACKGROUND.

Mixson states that his hearing difficulties began in 2016 while he was incarcerated at Greensville Correctional Center (Greensville).[2]  Prison officials sent him to an audiologist, and on February 15, 2017, that professional issued him "bilateral hearing aids."  Am. Compl. Aff. 2, ECF No. 32-3.  Mixson submits a copy of a letter dated February 15, 2017, from "Chesapeake Bay ENT," stating as follows:

> Patient is under the medical care of Ping Gao, Certified Physician Assistant, and Cindy Potter, Hearing Rehabilitation Specialist for bilateral sensorineural hearing loss.
>
> Patient should have accessibility to purchase the following equipment in order to help with his communication due to hearing impaired diagnosis.  The following is our recommendation for this patient:
>
> 1.  Noise isolation headphones
>
> 2.  19" television with large closed caption option
>
> 3.  DVD player for continuing communication skills & learning purposes — cords & cables that need to operate should be included.

Am. Compl. Ex. J, ECF No. 32-1.

---

[2]  Mixson's Amended Complaint does not include a chronological statement of facts on which he bases his claims.  Thus, this statement of factual allegations is primarily based on an unverified document attached to that pleading, ECF No. 32-3.

Sometime later in 2017, Greensville officials sent Mixson to a nearby hospital where he underwent a medical procedure. The doctor there advised Mixson to remove his hearing aids and give them to the escorting prison officials, and he did so. He never saw the hearing aids again. In September 2017, Mixson agreed to pay for replacement hearing aids. Then, he waited for nineteen months without receiving replacement hearing aids.

In mid-June 2018, Mixson arrived at Deep Meadow Correctional Center (Deep Meadow). During his medical intake procedure, he allegedly informed the medical staff about the lost hearing aids and about his desire to buy a TV with large close captions, noise isolating headphones, and a DVD player. Mixson alleges that he "was denied all medical care and denied access to disability specialized T.V." Am. Compl. Aff. 3, ECF No. 32-3.

In October 2018, officials transferred Mixson to Dillwyn Correctional Center (Dillwyn). He allegedly informed the medical staff at Dillwyn that he had lost his hearing aids and wanted to buy a specialized television to accommodate his hearing impairment. The Dillwyn medical staff sent Mixson to an audiologist for a second hearing evaluation. In January 2019, the audiologist confirmed Mixson's bilateral hearing loss, and in March 2019, the audiologist issued Mixson new hearing aids.

Mixson asserts that he also told Dillwyn the medical staff, the Warden Dana Ratliffe-Walker and the ADA Coordinator Keith Kelly of his desire to purchase the

special television.  The medical staff did not help Mixson with this request, and instead, referred him to Kelly.

In May 2019, officials transferred Mixson to Baskerville Correctional Center (Baskerville), where he told the medical staff and others about his desire to buy a special television because of his hearing impairment.  In August 2019, Mixson saw an audiologist who cleaned his hearing aids and adjusted the sound level for him.

In October 2019, Mixson arrived back at Dillwyn.  He told the administrative staff, the doctor, the warden, and the ADA coordinator that he wanted to buy a specialized television because of his hearing issues and had not received permission to do so.  He received some paperwork on the issue a few weeks later, but as of October 2020, he still does not have access to buy the specialized TV that the audiologist recommended.

Mixson initiated this action in April 2020 and submitted his Amended Complaint in October 2020, naming these defendants: Harold Clarke, VDOC Director; Mark Amonette, VDOC Health Services Director; Dana Ratliffe-Walker, Dillwyn Warden; and Keith Kelly, Dillwyn ADA Coordinator.  Liberally construing his allegations and attached exhibits, I find that Mixson is asserting claims that the defendants failed to ensure that he had access to purchase the specialized items recommended by the audiologist in 2017, including a television with large print closed captioning.  As relief, Mixson seeks monetary damages and injunctive and

-4-

declaratory relief directing the defendants to provide him with "a hearing impaired T.V. with large close caption and noise isolating headphones and a DVD player for education purposes."[3] Am. Compl. 19, ECF No. 32.

The defendants have moved for summary judgment, providing evidence that Mixson failed to exhaust administrative remedies before filing his complaint. Mixson has responded to the motion, making it ripe for consideration.

## II. DISCUSSION.

### A. The Exhaustion Requirement.

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring an action in this court concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust

---

[3] As relief, Mixson also wants reimbursement for the money he paid toward the replacement hearing aids he attempted to purchase. Am. Compl. 19, ECF No. 32. This requested relief, however, is not related to the claims asserted against the defendants in this action.

properly all available remedies under that procedure before bringing a civil action in this court.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

B.  VDOC Grievance Procedures.

Operating Procedure (OP) 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a).  Mem. Supp. Mot. Summ. J. Kinley Aff., Enclosure A, ECF No. 40-1.  All issues are grievable except certain matters outside the control of the VDOC.  Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison staff.  He should receive a written response on the bottom of the Informal Complaint form within fifteen days, to allow him to initiate the formal grievance procedure by filing a Regular Grievance (with the Informal Complaint or any other relevant documentation attached).

A Regular Grievance must be filed within thirty days of the occurrence about which it complains.  If a Regular Grievance does not comply with the filing requirements of OP 866.1, it will be rejected at intake and returned to the inmate within two working days from the date of receipt.  The respondent will note on the back of the form the reason for rejection (expired filing period, more than one issue raised, request for services, etc.).  The respondent will also instruct the inmate how to remedy any problems with the grievance if feasible so that he can correct the issue

and resubmit the Regular Grievance. If the inmate disagrees with the intake decision, he may send the Regular Grievance to the Regional Ombudsman for review of that decision. There is no further appeal of an intake decision, and an appeal of the intake decision does not satisfy the exhaustion requirement.

After a Regular Grievance is accepted at intake, the warden or his designee will investigate the complaint it contains and send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, to an appropriate VDOC official such as the Regional Administrator or other administrator, depending on subject matter. In most cases, this Level II review is the final available level of appeal. For full exhaustion, the inmate must submit his claim via an Informal Complaint, then in a Regular Grievance, and then through all available levels of appeal as required in OP 866.1.

### C. Mixson's Failure to Exhaust.

In support of the summary judgment motion,[4] as supplemented, the defendants offer affidavits from the human rights advocates at the VDOC facilities where

---

[4] The relevant inquiry on summary judgment is whether the evidence "presents a sufficient disagreement to require" that the issue be determined by a fact finder, "or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal quotation marks and citation omitted). To survive summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another,

Mixson has been confined since 2017.  These officials submit their affidavits and attached documentation of administrative remedies that Mixson properly filed related to his claims in the Amended Complaint during his incarceration at the various facilities.  Mixson does not dispute the accuracy of the defendants' records regarding the remedy forms they received from him.

The events at issue in Mixson's lawsuit began with the memo from Chesapeake Bay ENT, dated February 15, 2017, recommending that as an accommodation of his hearing impairment, Mixson should have the ability to purchase noise isolation headphones, a television with large closed captions, and a DVD player.  Am. Compl. Ex. J, ECF No. 32-1.  At that time, Mixson was confined at Greensville.  The defendants' records show that while Mixson was at Greensville, the grievance office did not receive any Informal Complaint or Regular grievance from him, asking to be allowed to purchase the items the ENT had recommended. Mem. Supp. Mot. Summ. J. Phillips Aff. ¶ 6, ECF No. 40-3.

From June 15, 2018 until October 31, 2018, Mixson was confined at State Farm Correctional Complex (formerly Deep Meadow).  While there, Mixson submitted an Informal Complaint, Grievance Number DMCC-18-INF-01265, dated July 31, 2018, complaining that the medical staff had refused to comply with an

---

or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

unspecified court order to give Mixson access to an ADA-compliant television. Nurse Minor responded on August 2, 2018, stating that the medical department had been unable to substantiate Mixson's complaint. *Id.* at Burgess Aff. ¶ 6 and Attach. A, ECF No. 40-2.

Mixson submitted a Regular Grievance dated August 8, 2018, demanding access to equipment to accommodate his hearing loss. He did not mention in this filing that he wanted to buy a television, headphones, or DVD player. Ms. Seay, the grievance coordinator at that time, did not accept Mixson's grievance during the intake process, noting that it was a request for services rather than a grievance. She did not assign a log number and returned the Regular Grievance form to Mixson. *Id.* ¶ 7. Mixon appealed the intake decision to the Regional Ombudsman. On August 13, 2018, the Regional Ombudsman upheld the intake decision. It is undisputed that an appeal of the intake decision does not constitute exhaustion of available administrative remedies within the VDOC procedure, because Mixson still had the option to submit a properly filed Regular Grievance and pursue it through available levels of appeal.

On October 31, 2018, officials transferred Mixson to Dillwyn, where he remained until May 2019. The defendants' records from that time period show that the grievance office at Dillwyn received no Informal Complaints or Regular

Grievances from Mixson regarding a television, headphones or a DVD player. Suppl. Mem. Supp. Mot. Summ. J. Kinley Suppl. Aff. ¶ 8, ECF No. 76-1.

From May 10, 2019, to November 15, 2019, Mixson was confined at Baskerville. The defendants' records show that during this time, the grievance office at Baskerville received no Informal Complaints or Regular Grievances from Mixson regarding a television, headphones, or DVD player. Mem. Supp. Mot. Summ. J. Bugg Aff. ¶ 6, ECF No. 40-4.

In November 2019, Mixson was transferred back to Dillwyn, where he was confined from November 15, 2019, until he transitioned to federal custody sometime in early 2021. The defendants' evidence is that while Mixson was at Dillwyn for more than a year, from November 2019 until January 2021, the grievance office there received no Informal Complaints or Regular Grievances from him regarding a television, headphones, or a DVD player. Kinley Aff. ¶ 12, ECF No. 40-1.

The defendants bear the burden of proving the affirmative defense that Mixson failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Brook*, 549 U.S. 199, 216 (2007). They have done so. From the undisputed evidence of Mixson's recorded grievance filings, it is clear that he did not properly file and have recorded any Regular Grievance about the equipment recommended by the audiologist. The defendants' records also do not

-10-

show that Mixson pursued any Regular Grievance on this topic through all levels of appeal according to the VDOC procedure requirements.

In response to the defendants' evidence, Mixson first asserts that the exhibits he has submitted demonstrate exhaustion.  He is mistaken.  His exhibits do not indicate that he ever properly filed a Regular Grievance on these issues at any facility where he was confined from 2017 to 2020.  In a sworn affidavit in response to the defendants' supplemental motion, Mixson asserts that he "did exhaust all available remedies."  Resp. Mixson Aff. 1, ECF No. 78-1.  He states that he "was often moved around from prison to prison in order to frustrate [his] attempts to seek administrative adjudication of issues," that he "placed all [his] grievances in the U.S. mail with adequate postage at every state prison [he] was in," and that he "swear[s] that [he] did mail the final appeal to the appropriate parties."  *Id.* at 1-2

The defendants have offered specific, detailed evidence from their records, showing that the grievance officers never received or accepted a Regular Grievance from Mixson on the issues in this case.  On the other hand, Mixson's assertions of exhaustion are conclusory and unsupported by facts.  He does not allege where or when he filed the required administrative remedy forms, what grievance he asserted, or what response (or lack of response) occurred.  Nor does he indicate what appeals he mailed or to whom or when.  Mixson's response rests on nothing more than his self-serving and conclusory allegations that the court need not accept as true in a

summary judgment analysis. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (finding that non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment); *Butts v. Aurora Health Care, Inc*., 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment."); *Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment."). The district court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted).

Based on the record before me, I conclude that Mixson has failed to present sufficiently specific facts to create a genuine material fact on which he could persuade a fact finder that he properly exhausted administrative remedies before filing this lawsuit. Therefore, the defendants are entitled to summary judgment as a matter of law. Because Mixson is no longer in the custody of the VDOC, I find that he could not now pursue and exhaust administrative remedies about his desire for

the VDOC to provide him access to the items recommended by the audiologist, related to his hearing loss.  Accordingly, I will dismiss his claims with prejudice.

### III.  CONCLUSION.

For the stated reasons, it is **ORDERED**  that the defendants' Motion for Summary Judgment, ECF No. 39, is GRANTED.

A separate Judgment will enter herewith.

ENTER:   September 2, 2022

/s/  JAMES P. JONES
Senior United States District Judge

-13-